E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
DENNIS MITCHELL (Cal. Bar No. 116039)
DOMINIQUE CAAMANO (Cal. Bar No. 301810)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2484/0492
    E-mail: dennis.mitchell@usdoj.gov
            dominique.caamano@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
5/10/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: jb DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:23-cr-00221-JFW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT TREVOR DANIEL JACOB |
| v. | |
| TREVOR DANIEL JACOB, | |
| Defendant. | |

    1.    This constitutes the plea agreement between Trevor Daniel Jacob ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

        a.    Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with destruction and concealment of tangible object with intent to obstruct federal investigation, in violation of 18 U.S.C. § 1519.

     b.  Not contest facts agreed to in this agreement.

     c.  Abide by all agreements regarding sentencing contained in this agreement.

     d.  Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

     e.  Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

     f.  Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

     g.  Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

## THE USAO'S OBLIGATIONS

3.  The USAO agrees to:

     a.  Not contest facts agreed to in this agreement.

     b.  Abide by all agreements regarding sentencing contained in this agreement.

     c.  At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

        d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 15 or higher and provided that the Court does not depart downward in offense level or criminal history category. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

## NATURE OF THE OFFENSE

4. Defendant understands that for defendant to be guilty of the crime charged in the single count information, that is, destruction and concealment of tangible object with intent to obstruct federal investigation, in violation of Title 18, United States Code, Section 1519. the following must be true: (1) defendant knowingly altered, destroyed, concealed, or falsified a tangible object; and (2) defendant acted with the intent to impede, obstruct, or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States.

PENALTIES

5. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1519 is: 20 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8. Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

9. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On November 24, 2021, defendant, an experienced pilot and sky diver, took off in his Taylorcraft BL-65 airplane which bore Civil Registration Number N 29508, from Lompoc City Airport on a solo flight purportedly destined for Mammoth Lakes, California. However, defendant did not intend to reach that destination. Instead, pursuant to a scheme to gain notoriety and to make money, defendant

planned to eject from his airplane during the flight and to video himself parachuting to the ground and his airplane as it descended and crashed.

Prior to taking off, defendant mounted several video cameras on different parts of the airplane and equipped himself with a parachute, video camera, and a selfie stick. Approximately 35 minutes after taking off, while flying above the Los Padres National Forest, near Santa Maria, California, defendant ejected from the airplane, and videoed himself as he parachuted to the ground. Using the video camera mounted on the selfie stick and the video cameras mounted on the airplane, defendant was able to record the airplane as it crashed into a dry brush area within Los Padres National Forest.

After parachuting to the ground, defendant hiked to the location of the wreck and recovered the data containing the video recording of defendant's flight and the crash of the airplane.

**LAUNCH OF FEDERAL INVESTIGATIONS**

On November 26, 2021, defendant informed the National Transportation Safety Board ("NTSB"), an agency of the United States, about the crash of his airplane. On or about that same date, the NTSB launched an investigation into the crash, and NTSB Senior Aviation Accident Investigator E.S. interviewed defendant by telephone. During that interview, Investigator E.S. told defendant that defendant was responsible for preserving the wreckage and that the NTSB would need to see the wreckage. Investigator E.S. emphasized to defendant that the focus was on identifying the location of the wreckage before he could give defendant further instructions. At the end of that interview, defendant agreed that he would determine the location of the crash and provide it to

Investigator E.S. Defendant also agreed to provide Investigator E.S. with videos of the accident.

On or about November 29, 2021, the Federal Aviation Administration ("FAA"), an administration in the United States Department of Transportation, also launched an investigation into the November 24, 2021, crash of defendant's airplane.

**DEFENDANT'S CONCEALED RECOVERY AND DESTRUCTION OF THE AIRPLANE WRECKAGE**

On or about November 30, 2021, Investigator E.S. followed-up with defendant and asked defendant, by email, if defendant knew the longitude and latitude coordinates for the aircraft wreckage. Approximately an hour and a half later, defendant responded by email, stating that he did not have the coordinates and was still trying to figure out exactly where the wreck was located. Subsequently, on January 3, 2022, Investigator E.S. again emailed defendant and, among other things, asked, "Has the wreckage been recovered, if so, where is it?" The following day, defendant responded by email and falsely stated, "Also, I am not aware of the plane location."

Despite defendant's claim that he was not aware of the plane wreckage location, defendant, in fact, had previously found the wreckage and had removed it from the crash site. In early December 2021, defendant contacted a helicopter company in Paso Robles, California, and asked the owner of that company, S.S., if he could help defendant retrieve his airplane.

Thereafter, on or about December 10, 2021, S.S. picked up defendant and defendant's friend in a helicopter at Rancho Sisquoc in Santa Maria, California. Defendant and his friend had each driven a pick-up truck to that location. Defendant informed S.S. of the

location of the plane wreckage, and they flew to the site of the wreckage. There, defendant [redacted] secured the wreckage with straps, and the helicopter subsequently lifted the wreckage, carried it to the Rancho Sisquoc location, and loaded it into the trailer of defendant's pick-up truck.

Defendant, followed by his friend, then drove the wreckage to the Lompoc City Airport and unloaded the wreckage into a hangar used by defendant. Thereafter, defendant cut up and destroyed the airplane wreckage and, over the course of a few days, deposited the detached parts of the wrecked aircraft into trash receptacles at the airport and elsewhere.

Defendant took apart the airplane and deposited its parts in trash receptacles with the intent to impede and obstruct Federal authorities, namely, the FAA and/or NTSB from being able to inspect the wreckage as part of their investigation into the November 24, 2021, crash of defendant's airplane.

**DEFENDANT'S PLAN TO MAKE MONEY FROM POSTING A VIDEO OF THE NOVEMBER 24, 2021, FLIGHT**

Prior to defendant's flight on November 24, 2021, defendant had secured a sponsorship from a company that sold various products, including a wallet. Pursuant to that sponsorship deal, defendant would promote the company's wallet in the video to be posted by defendant on YouTube. Defendant intended to make money by promoting the wallet in the video that would depict, among other things, defendant parachuting from the airplane, and the airplane descending and crashing.

Consequently, on or about December 23, 2021, defendant uploaded a video on YouTube that contained a promotion of the wallet and video

of, among other things: (1) defendant piloting the airplane; (2) defendant exiting the airplane and parachuting to the ground; and (3) the crash of the airplane.

**OTHER FALSE STATEMENTS BY DEFENDANT TO CONCEAL HIS SCHEME**

Prior to removing his airplane from the crash site and destroying it, defendant had also made false statements to federal authorities to impede the NTSB's and/or FAA's investigation into the crash. For example, on or about November 30, 2021, defendant completed and submitted an NTSB Pilot/Operator Aircraft Accident Incident Report. In that report, defendant falsely indicated that he had experienced a full loss of power approximately 35 minutes after taking off.

In addition, on December 2, 2021, during a phone interview with FAA Aviation Safety Inspector E.B., defendant falsely stated that the airplane engine had quit, and, because defendant could not identify any safe landing options, defendant parachuted out of the airplane.

Defendant knowingly made those false statements in order to conceal the fact that he had purposely abandoned his airplane in flight as part of his scheme to create a video to gain notoriety and to make money.

## SENTENCING FACTORS

10. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. § 2J1.2(a) |
| Specific Offense Characteristics: (Selection of essential or especially probative object and extensive planning/preparation) | +2 | U.S.S.G. § 2J1.2(b)(3)(B) and (C) |

12. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7). The USAO also reserves the right to argue that a two-level upward adjustment for aggravated role under U.S.S.G. § 3B1.1(c) should be applied in calculating the applicable Sentencing Guidelines range, and that, as a condition of probation or supervised release, defendant shall be prohibited from applying for any type of pilot license.

## WAIVER OF CONSTITUTIONAL RIGHTS

14. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e.  The right to confront and cross-examine witnesses against defendant.

    f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g.  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

    h.  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

15. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

16. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 24 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and the prohibition that defendant shall not apply for a pilot license of any type during the term of probation or supervised release.

17. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 18 months, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

18. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

19. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

20. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

21. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

13

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

23. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

26. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

The parties agree that this agreement will be considered

part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*[signature]* 5-5-23
DENNIS MITCHELL                Date
Assistant United States Attorney

*[signature]* 4-25-2023
TREVOR DANIEL JACOB            Date
Defendant

*[signature]* 5/1/2023
KERI CURTIS AXEL               Date
Attorney for Defendant TREVOR
DANIEL JACOB

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in

17

any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

*[signature]*  4-25-2023

TREVOR DANIEL JACOB
Defendant

Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am TREVOR JACOB's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

*[signature]*  5/1/2023

KERI CURTIS AXEL
Attorney for Defendant TREVOR
DANIEL JACOB

Date