E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes and Consumer
Protection Section
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorney
Deputy Chief, Environmental Crimes and
Consumer Protection Section
DOMINIQUE CAAMANO (Cal. Bar No. )
Assistant United States Attorney
Environmental Crimes and Consumer Protection Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2484
     E-mail: mark.a.williams@usdoj.gov
             dennis.mitchell@usdoj.gov
             dominique.caamano@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-221-JFW |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S RESPONSE TO THE PRE-SENTENCE REPORT AND SENTENCING RECOMMENDATION FOR DEFENDANT TREVOR JACOB</u> |
| v. | |
| TREVOR JACOB, | |
| Defendant. | Sent. Hearing Date: 12-4-23 |
| | Time: 8:00 a.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Dennis Mitchell,

Dominique Caamano, and Mark A. Williams hereby submits its Response to the Pre-Sentence Report and Sentencing Recommendation for defendant Trevor Jacob.

Dated: November 13, 2023      E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

      /s/
DENNIS MITCHELL
DOMINIQUE CAAMANO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## I. INTRODUCTION

Pursuant to his plea agreement with the government, on June 30, 2023, defendant Trevor Jacob ("defendant") pleaded guilty to a single count information which charged defendant with destruction and concealment of a tangible object with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of a department or agency of the United States, in violation of Title 18, United States Code, Section 1519.

## II. GOVERNMENT'S RESPONSE TO THE PRESENTENCE REPORT

The government has reviewed the presentence report ("PSR") and agrees with the factual findings and United States Sentencing Guidelines (also referred to as "USSG") calculations set forth therein. However, late last week, the government received additional documents from defense counsel which may show that defendant's criminal history category should be a Category I instead of II. The government needs additional time to review those documents. If, after reviewing those documents, the government agrees with defense counsel that defendant's criminal history category should be I instead of II, the government will recommend a low-end sentence of 10 months imprisonment instead of 12 months imprisonment.

Pursuant to its plea agreement with defendant, the government calculates defendant's USSG offense level as follows: A base level of 14 pursuant to USSG Section 2J1.2(a), a two-level upward adjustment for selection of an essential or especially probative object or extensive planning/preparation pursuant to USSG Section 2J1.2(b)(3)(B), and three-level downward adjustment for acceptance of responsibility pursuant to USSG Section 3E1.1. With a total offense

level of 13 and a Criminal History Category of II (See PSR, ¶¶ 48-53), defendant's USSG range is 12 to 18 months in Zone D.

For the reasons set forth below, and pursuant to its plea agreement with defendant, the government recommends that defendant be sentenced to a term of imprisonment of 15 months, a three-year term of supervised release, a fine of $10,000, and a special assessment of $100.

### III. UNDER THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a), A 15-MONTH TERM OF IMPRISONMENT IS WARRANTED.

#### A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

On November 24, 2021, when defendant took off in his aircraft from Lompoc City Airport on November 24, 2021, he had no intent on reaching his purported destination, Mammoth Lakes, California. PSR, ¶¶ 10-11. Instead, defendant planned to eject from his airplane during the flight and to videotape himself parachuting to the ground and his airplane as it descended and crashed. Id., ¶ 11. Further, defendant planned to post that video on YouTube. Id.

Prior to taking off, defendant mounted several video cameras on different parts of the airplane and equipped himself with a parachute, video camera, and a selfie stock. Id., ¶12. Approximately 35 minutes after taking off, while flying above the Los Padres National Forest, defendant ejected from the airplane and videoed himself as he parachuted to the ground. Id. Using the video camera mounted on his selfie stick and the video cameras mounted on the airplane, defendant recorded the airplane as it descended and crashed into the Los Padres National Forest. Id.

1   After parachuting to the ground, defendant hiked to the location
2 of the airplane wreck and recovered the data containing the video
3 recording of his flight and the crash of the airplane. Id.
4   Two days later, defendant notified the National Transportation
5 Safety Board ("NTSB") about the crash of his airplane. Id., ¶14. On
6 or about that same date, the NTSB launched an investigation into the
7 crash and an NTSB Senior Aviation Investigator ("the NTSB
8 Investigator") interviewed defendant by telephone. Id., ¶ 15.
9   During the interview, the NTSB Investigator told defendant that
10 defendant was responsible for preserving the wreckage, and that the
11 NTSB would need to see the wreckage. Id., ¶ 16. In fact, the NTSB
12 Investigator emphasized to defendant that the focus was on
13 identifying the location of the wreckage. Id. At the end of the
14 interview, defendant agreed to provide the NTSB Investigator with
15 videos of the crash. Id.
16   On November 29, 2021, the Federal Aviation Administration
17 ("FAQA") also launched an investigation into the crash of defendant's
18 airplane. Id., ¶ 17.
19   On November 30, 2021, the NTSB Investigator followed up with
20 defendant and asked defendant by email if defendant knew the
21 longitude and latitude coordinates for the aircraft wreckage. Id.,
22 ¶ 18. About an hour and a half later, defendant responded by email,
23 stating that he did not have the coordinates and was still trying to
24 locate the wreckage. Id., ¶ 19.
25   In early December 2021, defendant contacted a helicopter
26 company, and asked the owner of that company, S.S., if he could help
27 defendant retrieve his airplane. Id., ¶ 20. Thereafter, on December
28 10, 2021, S.S. picked up defendant and defendant's friend in a

3

helicopter in Santa Maria, California.  Id., ¶ 21.  Defendant and his friend had each driven a pick-up truck to the location where S.S. picked them up.  Id.  Defendant informed S.S. of the location of the plane wreckage, and S.S. flew defendant and his friend to the site of the wreckage.  Id.   There, defendant secured the aircraft wreckage with straps, and the helicopter subsequently lifted the wreckage and carried it back to the meeting location in Santa Maria.  Id.

At the meeting location, the helicopter loaded the wreckage into the trailer of defendant's pick-up truck.  Plea Agreement, P. 8:2-5 Docket Entry No. 5, Filed 5-10-23.  Defendant drove the wreckage to the Lompoc City Airport and unloaded the wreckage into a hangar used by defendant.  PSR, ¶ 22.  Thereafter, defendant cut up and destroyed the airplane wreckage and, over the course of a few days, deposited the detached parts of the wrecked aircraft into trash receptacles at the airport and elsewhere.  Id., ¶ 23.

Subsequently, on January 3, 2022, the NTSB Investigator again emailed defendant and, among other things, asked defendant, Has the wreckage been recovered, if so, where is it?"  The following day, defendant responded by email and falsely stated, "I am not aware of the plane location."  Id., ¶¶ 24-25.

The intentional crashing of an airplane alone is a very serious offense.  When defendant's plane crashed in the Los Padres National Forest, it damaged natural vegetation and created an unnecessary and serious risk of a forest fire.  Moreover, while the plane crashed in an area that was not inhabited, and in an area where the nearest hiking trails appeared to be closed, the airplane could still have caused serious bodily injury or death if someone was in the area of

the crash site.  In short, this was an exceptionally reckless stunt that could have had far more serious consequences.

Defendant's subsequent destruction of the plane wreckage with the intent to impede the federal investigation into the crash constitutes another serious offense.  An airplane crash is a significant event.  It is often associated with loss of life, serious injury, and destruction of property.  Some aircraft crashes also result in the casualties on the ground in addition to property damage.

Aircraft operators, passengers, the government, and the general public have a strong interest in knowing the circumstances and causes of an airplane crash.  Consequently, every airplane crash in the United States is investigated by the FAA and the National Transportation Safety Board.  It is common knowledge that the examination of a crashed airplane is often critical in determining the cause of a crash.

In this case, defendant knew that federal authorities were anxious to examine the wreckage.  Moreover, defendant knew the location of the wreckage.  However, instead of cooperating in the investigation, defendant obstructed it.  Defendant prevented federal authorities the chance to examine the wreckage by secretly recovering the wreckage, destroying it, and then disposing of the aircraft parts.  Even after recovering and destroying the aircraft, defendant falsely represented to the NTSB Investigator that he did not know the

5

location of the wreckage.[1]  Defendant's conduct was clearly designed to obstruct and impeded the federal investigation.

More troubling is the fact that financial gain was at least part of the defendant's motive in committing the foregoing offenses. Prior to defendant's flight, defendant had secured a sponsorship from a company that sold various products, including a wallet.  Id., ¶ 26. Pursuant to that sponsorship deal, defendant would promote the company's wallet in the video to be posted by defendant on YouTube. Id.  Defendant intended to make money by promoting the wallet in the video that would depict, among other things, defendant parachuting from his airplane and the airplane descending and crashing.  Id. Consequently, on December 23, 2021, defendant uploaded a video on YouTube that contained a promotion of the wallet and video of, among other things, defendant piloting the airplane, ejecting from the airplane, and parachuting to the ground, and defendant's plane crashing into the forest.  Id., ¶ 27.

With respect to mitigating factors, defendant does not have a significant criminal history.  His prior convictions consist solely of trespassing on railroad property.  Id., ¶¶ 49-51.  In addition, defendant has previously excelled as an athlete, having made the United States Snowboarding Team when he was 16 years old and actually competing in the 2014 Winter Olympics in Russia.  Id., ¶ 63.  That

---

[1] Defendant made other false statements to federal authorities. On November 31, 2021, defendant completed and submitted an NTSB Pilot/Operator Aircraft Accident Incident Report in which defendant falsely indicated that he had experienced a full loss of power approximately 35 minutes after takeoff.  Id., ¶ 29.  On December 2, 2021, during a phone interview with FAA Aviation Safety Inspector E.B., defendant falsely stated that the airplane engine had quit, and because defendant could not identify any safe landing options, and, consequently, parachuted out of the plane.  Id., ¶ 30.

achievement shows that defendant can be successful when applying himself to something productive.

Nevertheless, in light of the facts set forth above, a 12-month term of imprisonment strikes an appropriate balance between the serious nature and circumstances of defendant's offense, on the one hand, and defendant's history and characteristics, on the other.

### B. THE NEED FOR THE SENTENCE IMPOSED TO RELFECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

A term of imprisonment is needed to reflect the seriousness of defendant's offense and to promote respect for the law. A 12-month term of imprisonment would reflect the seriousness of defendant's offense, sufficiently promote respect for the law, and provide a just punishment for defendant's offense.

### C. THE NEED FOR THE SENTENCE IMPOSED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

The need to afford adequate deterrence is <u>very</u> significant in this case. It appears that defendant exercised exceptionally poor judgment is committing this offense. Given the facts described above, defendant most likely committed this offense to generate social media and news coverage for himself and to obtain financial gain.

Nevertheless, this type of "daredevil" conduct cannot be tolerated. A term of imprisonment is necessary to prevent others from attempting this type of stunt. Simply put, others who might be tempted to gain social media notoriety and/or financial gain by crashing an airplane need to know that they will face imprisonment.

7

**D.   THE NEED FOR THE SENTENCE IMPOSED TO PROTECT THE PUBLIC FROM FURTHER CRIMES BY DEFENDANT**

The government's recommended sentence should adequately protect the public from any further criminal conduct by defendant. As set forth above, defendant has a minimal criminal history. The consequences of a felony conviction, a 12-month term of imprisonment, and a $10,000 fine should serve as a sufficient wake-up call for defendant to steer himself in the right direction from hereon.

**E.   THE NEED TO PROVIDE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER**

The facts set forth in the PSR do not identify a need for the recommended sentence to provide any particular vocational training, medical care, or other correctional treatment.

**F.   THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANT WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT**

In light of the applicable sentencing range of 12 to 18 months, and the facts set forth above, it is unlikely that the government's recommended sentence would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.

**IV. CONCLUSION**

For the reasons set forth above, the government recommends that defendant be sentenced to a 12-month term of imprisonment, a fine of $10,000, a two-year term of supervised release, and a $100 special assessment.